# EXHIBIT A

# THERAPY SERVICES AGREEMENT

This Agreement **("Agreement")** is made as of the 1st day of November, 2015, by and between **THE REHAB DEPARTMENT, LLC,** a Wyoming corporation and having offices at 24762 US HWY 19 N, Clearwater, FL 33763 **("Contractor")** and **Cambridge Sierra Holdings, LLC d/b/a Reche Canyon Rehab and Health Care Center** having an address of 1350 Reche Canyon Road, Colton, CA 92324 **("Facility")**.

**WHEREAS**, Facility operates a licensed skilled nursing facility that furnishes nursing care to residents who are also in need of therapy services that are not available directly from Facility; and

**WHEREAS**, Contractor employs or otherwise engages licensed professionals ("Therapists") who furnish speech-language pathology, physical and occupational therapy services ("Rehabilitation Services"); and

**WHEREAS**, Facility desires to make arrangements with Contractor for the furnishing of Rehabilitation Services to its patients.

**NOW, THEREFORE**, for good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, and in consideration of the mutual covenants herein contained, the parties agree as follows:

**1. OBLIGATIONS OF CONTRACTOR**

1.1 Availability. Contractor will provide licensed Therapists in adequate training and number to provide Rehabilitation Services at the Facility as needed by the Facility's patients. Upon Facility's request, Contractor will provide Rehabilitation Services on weekends and holidays, as clinically appropriate.

1.2 Compliance. Contractor will provide Rehabilitation Services in accordance with applicable federal and state laws. Further, Contractor will provide Rehabilitation Services in accordance with the policies of the Facility and subject to the same requirements as those applicable to the services being provided directly by Facility.

1.3 Plan of Care. Contractor will provide Rehabilitation Services in accordance with a plan of care established by the physician responsible for each patient's care or other qualified healthcare professional, as permitted by law, in accordance with the Medicare policies for therapy plans of care at Pub. 100-02, Chapter 15, §220.1.2.

1.4 Records. Contractor will prepare treatment records, with progress notes and observations in accordance with the requirements of any federal or state agency and Medicare policies at Pub.100-02, Chapter 15, §230.6. Contractor will provide prompt incorporation of such records into the clinical records of Facility. Contractor will track/monitor all information provided by the Facility as it relates to the then current capitation amount of Medicare Part B therapy charges imposed by the Federal Government and will promptly notify Facility when a particular patient is approaching the capitation amount and if that patient qualifies under the exception process as provided by Centers for Medicare and Medicaid Services ("CMS").

1.5 Audit/Compliance Reviews. Contractor will conduct regular self-audit/compliance reviews, at the direction and control of Contractor's counsel, in order to ensure that Contractor complies with federal, state and local statutes and regulations applicable to the provision of Rehabilitation Services generally.

1.6 Conferences and Care Coordination. A representative from the therapy department will participate in conferences required to coordinate the care of an individual patient receiving or to receive therapy services under this Agreement.

1.7 Resources.  During the term of this Agreement, Contractor will use its confidential and proprietary Policies and Procedures Manuals at the Facility in carrying out its obligations.

1.8 Software.  Contractor will utilize the necessary software needed to manage the delivery of Rehabilitation Services at the Facility.

1.9 Appeal of Denials. Contractor will assist Facility in appealing denials of claims for Rehabilitation Services, provided that Facility has, within forty-five (45) days after receiving notice from its intermediary or other source of

such denial, provided to Contractor copies of all written materials relating to such denial including the notice thereof.

1.10 <u>Additional Services</u>. Upon the request and approval of Facility Administrator, Contractor agrees to provide additional services as listed on Exhibit "B" if hereto attached.

1.11 <u>Exclusivity of Agreement</u>. Contractor shall be the exclusive agent under this Agreement to furnish the Rehabilitation Services. During the term of this Agreement, Facility shall not enter into any agreement with any person or entity or retain any person or entity, to provide any Rehabilitation Service substantially similar to those provided by Contractor under this Agreement. Nothing in this Agreement shall be construed to limit the right of any Facility resident to select his or her own provider of Rehabilitation Services.

**2. <u>OBLIGATIONS OF FACILITY</u>**

2.1 <u>Provision of Services</u>. Therapists will provide Rehabilitation Services under the control and supervision of the Facility in accordance with Medicare policies at Pub.100-02, Chapter 15, §230.6 and Facility shall maintain supervision and control over its assets and operations. Facility's responsibilities include:

(a) accepting each patient for treatment in accordance with its admission policies;

(b) appointment and maintenance of a liaison for each patient's attending physician/non-physician practitioner who will provide information for Therapists with regard to the progress of the patient and who will assure that the patient's plan of treatment is periodically reviewed by the attending physician/non-physician practitioner;

(c) securing from the physician the required, orders, certifications and recertifications;

(d) verifying the medical necessity of Rehabilitation Services provided is reviewed on a random sample basis by Contractor's staff or an outside review group;

(e) determining proper patient classification utilizing the minimum data set ("MDS") classification system;

(f) assuring compliance with the time limitations for electronically submitting the MDS regulated by the Federal Medicare and/or State Medicaid Program(s), as such time limitations relate to individual residents of the Facility; and

(g) provide Contractor with all Medicare Part B patient information as it relates to the then current capitation amount of therapy charges imposed by the Federal Government. Specifically, Facility will provide Contractor with sufficient information to allow Contractor to determine the dollar values utilized by a particular patient under the capitation amount prior to the provision of services by Contractor.

2.2 <u>Equipment Provided</u>. Unless otherwise agreed to by the parties in writing, Facility will provide all therapy equipment and supplies required by Contractor. Facility will provide Contractor with space to Contractor, from which to provide the Rehabilitation Services.

2.3 <u>Record Maintenance</u>. Facility will be responsible for maintaining a complete and timely clinical record for each patient, including diagnosis, medical history, physician's orders and progress notes relating to all Rehabilitation Services received, including MDS assessments and resource utilization groups ("RUGs") IV classifications, relating to the provision of Rehabilitation Services. Facility will make available to Contractor for review and inspection on a timely basis and upon request, individual patient treatment, MDS and RUGs IV classification records necessary for the proper evaluation, screening, treatment, billing and provision of Rehabilitation Services. Contractor may incorporate copies of such records into its own records and Facility will, where required, obtain the proper consents required to permit such disclosure. Facility will be responsible for alerting Contractor to any and all federal, state and local regulations pertaining to the confidentiality of patient records. Contractor agrees to respect and abide by such regulations.

2.4 <u>Designation of Representative</u>. Facility shall designate an individual to whom Contractor shall report, and upon whose authority Contractor will be entitled to rely for directions and approvals.

2.5 <u>Insurance Verification.</u>  The Facility is responsible for providing accurate insurance information (Medicare A, Medicare Replacement, Managed Care/HMO, Medicare Part B, Medicaid, Private Pay, Other) in writing, for every patient that receives Rehabilitation Services.  This information must be renewed at each intervention period. Facility must notify Contractor's Therapy Director of any changes to the original insurance information within eight (8) calendar days of services.  Contractor will bill Facility according to the insurance information provided by Facility's Business Office Manager or designee.

**3. PAYMENTS**

Facility will pay Contractor for the Rehabilitation Services rendered at the rates indicated on Exhibit "A" and, if applicable, Exhibit "B" if attached hereto.

On or before the 15th business day of each calendar month, Contractor will forward an invoice for the fee payable to Contractor for Rehabilitation Services rendered. Each such invoice shall be due and payable by Facility within ninety (90) days after the date of the invoice. Facility will pay interest at the rate of two percent (2%) per annum accruing from the date due until paid. Facility will reimburse Contractor for all costs and expenses, including attorneys' fees and court costs incurred in collecting any amounts due to Contractor under this Agreement.

**4. TERM OF AGREEMENT/TERMINATION AND DEFAULT**

4.1 <u>Term of Agreement</u>. This Agreement shall begin on November 1, 2015, and continue for a period of one (1) year. This Agreement shall automatically renew for additional periods of one (1) year each without further action of either party unless terminated as provided below.

4.2 <u>Termination Without Cause</u>.

    (a) Facility shall have the right to terminate this Agreement at any time, with or without cause, upon the giving of thirty (30) days' advance written notice to the Contractor at the address set forth below.

4.3. <u>Termination for Cause</u>. Either party may terminate this Agreement upon a material breach of this Agreement; provided, however, that the party claiming breach must notify the other party in writing of such material breach and must give such other party ninety (90) days within which to cure the alleged material breach.

4.4 <u>Monetary Default</u>. Contractor may terminate this Agreement upon ninety (90) days' written notice to the Facility if Facility fails to pay Contractor any fee, expense or other sum of money when due.

4.5 <u>Bankruptcy; Inability to Pay</u>. To the extent permitted by law or regulation, either party may terminate this Agreement upon three (3) days written notice if any of the following events occur: a petition is filed by or against either party relating to such other party's bankruptcy, insolvency or reorganization or for the appointment of a receiver or trustee of such other party's property; the other party has made an assignment for the benefit of its creditors; the other party's property has been seized or taken by any governmental officer or agency pursuant to statutory authority for the dissolution or liquidation of such other party; or an admission in writing by such party of its inability to pay its debts as they become due.

4.6 <u>Licensure Revocation</u>. If the licenses held by Facility are at any time suspended, terminated or revoked, Contractor may terminate this Agreement upon three (3) days written notice to Facility.

4.7 <u>Effect of Termination</u>. Termination of this Agreement for any reason shall not affect or negate the obligation of Facility to pay the fees to Contractor accruing prior to the effective date of termination. All fees for Rehabilitation Services rendered by Contractor become immediately due and payable within forty-five (45) days after the receipt of final invoice(s) following the effective date of termination.

4.8 <u>Therapy Billing System</u>.  Upon termination of this Agreement, Contractor will provide Facility the data produced in Contractor's therapy billing system during the term of this Agreement.

**5. NOTICES**

All notices, demands and requests contemplated or required to be given hereunder by either party to the other shall be in writing, and shall be delivered by certified mail, postage prepaid, return receipt requested, or by personal delivery or courier, with acknowledgement of delivery:

| | |
|---|---|
| **TO CONTRACTOR:** | **TO FACILITY:** |
| **The Rehab Department, LLC**<br>24761 US HWY 19 N, Suite 650<br>Clearwater, FL 33763<br>Attn: CEO | Attn: Administrator |

or to such other address or to such other person as may be designated by notice given from time to time during the term by one (1) party to the other. Any notice, demand or request hereunder shall be deemed given on the earlier of actual receipt or (i) three (3) days after mailing, if given by certified mail, (ii) on the date delivered if given personally, or (iii) the next day, if delivered by nationally recognized overnight shipper.

### 6. BILLING, DENIALS AND APPEAL

6.1 <u>Billing, Collection, Etc</u>. Facility is responsible for all billing and collections relating to Rehabilitation Services, except as otherwise provided in this section. Facility has ninety (90) days from receipt of invoice to resolve any outstanding invoicing and/or billing discrepancies with Contractor. After this ninety (90) day period has expired, Facility will have waived any right to request changes to invoices from Contractor.

6.2 <u>Denials</u>. Facility's obligation to pay Contractor is not contingent upon Facility's collection of amounts billed to any payor or individual patient; provided, however, that Contractor will reimburse Facility those direct charges of Contractor for Rehabilitation Services that are denied as a direct result of Contractor's failure to timely submit documentation of a claim that is the responsibility of Contractor under this Agreement. Facility shall forfeit indemnification in the event Facility fails to provide Contractor with notice as set forth in Section 1.9 above. Contractor agrees to reimburse Facility.

6.3 <u>Denials Based on Exceeding Capitation Amount</u>. The parties agree that Contractor will rely solely on Facility to provide it with accurate information as it relates to the Medicare Part B capitation amount utilized by a particular patient prior to treatment by Contractor. If Facility fails to provide accurate information and, as a result, a particular patient exceeds the capitated amount, Facility will be responsible for any Medicare denials that occur.

6.4 <u>Fraud and Abuse</u>. Contractor and Facility agree not to participate in any activity that may constitute or be construed as Medicare or Medicaid fraud and abuse. Given the continued uncertainty concerning the scope of actions prohibited by the provisions of the Social Security Act, it is agreed that should either party become concerned that any provisions of or any activity undertaken pursuant to this Agreement may be in violation of such statute, the concerned party shall give the other party written notice pursuant to this Agreement setting forth its concerns, and the parties shall promptly commence, and in good faith, pursue discussions to resolve such concerns.

### 7. NON-DISCLOSURE

Facility acknowledges that Contractor may make disclosures to Facility of certain confidential and proprietary information and materials related to Contractor and its business and operations. The contents of all such disclosures, explanations and any writings and materials related thereto, whether or not prepared by Contractor, are deemed Contractor's proprietary information. All clinical protocols, manuals, modules, in service materials, documentation, forms and other written materials provided by Contractor are deemed proprietary materials subject to this section.

Facility acknowledges and agrees that any and all materials described in this Section are to be kept confidential and not to be used by Facility or revealed to anyone by Facility without the express written consent of Contractor. Facility shall return all confidential information to Contractor upon request and immediately upon the termination of this Agreement. The obligations of Facility hereunder shall survive the termination of this Agreement.

### 8. INSURANCE

8.1 <u>Medical Professional Liability/Commercial General Liability</u>. During the Term of this Agreement, Contractor shall maintain with an insurance carrier of its choice and at its sole discretion, cost and expense, medical professional liability insurance for the limits of liability not less than $1,000,000 per medical incident and commercial general liability insurance for limits of liability not less than $1,000,000 per occurrence for bodily injury, property damage and personal injury liability. These coverages can be provided under a single policy or combination of policies with total Aggregate Limits of Liability not less than $1,000,000.

8.2 Facility shall carry a policy or policies of professional liability and general insurance, issued by an insurance carrier acceptable to Contractor, providing coverage in the amount of at least $1,000,000 per occurrence and $3,000,000 aggregate per year.

**9. INDEMNIFICATION**

Neither Facility or Contractor nor any of their respective officers, employees or agents shall be liable to third parties for any negligent act or omission of the other party, their officers, employees or agents in performing their respective obligations under this Agreement. Each party agrees to indemnify and hold the other party and its directors, officers, employees and agents, harmless from and against any claim, loss, damage or expense including reasonable attorney's fees for which such other party becomes liable due to the negligent acts or omissions of the other. Notwithstanding the foregoing, neither party shall be liable for special, incidental, consequential or punitive damages under this Agreement, even if advised of the possibility thereof of such damages. In addition to any other right of indemnity and/or contribution provided herein, each party specifically reserves any common law right of indemnity and/or contribution which either party may have against the other.

**10. PERSONNEL COVENANT**

Intentionally deleted.

**11. PROTECTION OF CONTRACTOR; EQUITABLE RELIEF**

Intentionally deleted.

**12. ACCESS TO BOOKS AND RECORDS**

To the extent required under applicable law, the parties shall, until the expiration of five (5) years after the furnishing of Rehabilitation Services hereunder, make available upon the request of the Secretary of Health and Human Services or the Comptroller General of the United States or any of their duly authorized representations, this Agreement and the books, documents and any records that are necessary to verify the nature and extent of the costs relating to this Agreement. If Contractor carries out the duties of this agreement through a subcontract worth ten thousand dollars ($10,000.00) or more over a twelve (12) month period with a related organization, the subcontract will also contain an access clause to permit access by the Secretary, Comptroller General and their representatives, to the related organization's books and records.

**13. BINDING AGREEMENT**

The terms, covenants, conditions, provisions and agreements contained in this Agreement shall be binding upon, and inure to the benefit of, the parties hereto, and their permitted successors and permitted assigns.

**14. RELATIONSHIP OF THE PARTIES**

The relationship of the parties shall be that of independent contractors. Nothing contained in this Agreement shall constitute or be construed to be or to create a partnership, joint venture or other such relationship between the parties.

**15. NONDISCRIMINATION**

The Contractor and Facility agree that neither will discriminate in the performance of this Agreement against any individual on the basis of age, sex, race, color, religious belief, national origin or disability or any other classification protected by federal, state or local law.

**16. SURVIVAL OF REPRESENTATIONS AND WARRANTIES**

All representations and warranties made by each party in this Agreement, and all covenants and obligations of each party which are to be performed after the termination of this Agreement, shall survive the termination of this Agreement.

**17. ENTIRE AGREEMENT**

This Agreement, together with its attachments, contains the entire agreement between the parties with respect to the subject matter of this Agreement and no prior oral or written representations or agreements between the parties shall be of any force and effect. Any additions, amendments or modifications to this Agreement shall be of no force and effect unless in writing and signed by both parties.

**18. GOVERNING LAW**

This Agreement will be governed by the laws of the State in which the Facility's licensed nursing facility is located.

**19. NO WAIVER**

Any failure of a party to enforce that party's rights under any provision of this Agreement shall not be construed or act as a waiver of said party's subsequent right to enforce any of the provisions contained herein.

**20. ATTORNEYS' FEES**

If any party finds it necessary to employ legal counsel to bring an action or other proceeding against the other party to enforce any of the terms hereof, the party prevailing in any such action or other proceeding shall be paid by the other party its reasonable attorneys' fees, as well as court costs.

**21. REPRESENTATION AS TO GOVERNMENT PROGRAMS**

Facility hereby represents and warrants that Facility and any employee, contractor or agent of Facility providing services under this Agreement are not and at no time have been excluded from participation in any federally funded health care program, including Medicare and Medicaid. Facility hereby agrees to immediately notify Contractor of any threatened, proposed, or actual exclusion from any federally funded health care program, including Medicare and Medicaid. In the event that Facility or any employee, contractor or agent of Facility providing services under this Agreement is excluded from participation in any federally funded health care program during the term of this Agreement, or if any time after the effective date of this Agreement it is determined that Facility is in breach of this Section, this Agreement shall, as of the effective date of such exclusion or breach, automatically terminate.

**22. COMPLIANCE WITH MEDICARE POLICIES**

Each party represents and warrants that it is in compliance with Medicare policies regarding Therapy Services furnished under Arrangements with Providers at Pub. 100-02, Chapter 15, §230.6 and as incorporated into the terms and conditions of this Agreement.

**23. CHANGE IN LAW**

The parties acknowledge that future changes in federal, state or local law, future judicial decisions or regulatory interpretations of law contained in notices, bulletins, advisory opinions, commentaries to regulations or other regulatory guidance, including, but not limited to changes to the Medicare reimbursement schedule (collectively, a "Change in Law"), may affect this Agreement and the relationship described herein.  In the event of any actual or proposed Change in Law that, in the opinion of legal counsel for Contractor or Facility, does or would invalidate any provisions of this Agreement or cause any party hereto to be in violation of law upon performance of such party's obligations hereunder, or alter the agreed upon fair market value compensation structure under this Agreement, either party may request renegotiation of the applicable or affected terms of this Agreement upon written notice to the other party.  The parties then shall immediately use their best efforts, consistent with the purposes and intent of this Agreement, to negotiate amendments to this Agreement in order to bring the terms hereof into compliance with

the requirements of law, or return the parties to status quo, as the case may be. If the parties, acting in both good faith, are unable to do so within thirty (30) days, then any party adversely affected by the Change in Law may terminate this Agreement immediately upon written notice to the other party.

**[REMAINDER OF PAGE INTENTIONALLY LEFT BLANK]**

**[SIGNATURE PAGE IMMEDIATELY FOLLOWING]**

**IN WITNESS WHEREOF**, the parties have executed and delivered this Agreement on the date first above written.

**The Rehab Department, LLC**                          **Reche Canyon Rehab & Health Center**

By: *Remko van der Voordt, CEO*                        By: *A. Ford*

Name: Remko van der Voordt                             Name: *Andrea Ford*

Title: CEO                                             Title: *Executive Director*

Date: 10/29/2015                                       Date: *11/1/2015*

8

## EXHIBIT "A" - FEE SCHEDULE

**WHEREFORE,** Contractor agrees to provide all services to Facility at a rate equal to the cost incurred by Contractor in providing the services.

**The Rehab Department, LLC**

Initials: _RV_   Date: _10/29/2015_          Initials: _AZ_ Date: _11/1/15_

## EXHIBIT "B" – ADDITIONAL SERVICES

None.

**The Rehab Department, LLC**

Initial: _RV_ Date: 10/29/2015    Initial: _MT_ Date: 11/1/15