**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION**

THE REHAB DEPARTMENT, LLC, a
Wyoming Limited Liability Company

      Plaintiff,

v.                                Case No.: 8:23-CV-02554-SDM-UAM

ARK POST ACUTE NETWORKS, LLC,
et al.,

      Defendants.

_____/

**REPLY TO RESPONSE IN OPPOSITION TO MOTION
TO DISCHARGE LEWIS BRISBOIS BISGAARD & SMITH LLP
AND SUBSTITUTE JOHNSON, NEWLON & DECORT, P.A.
<u>AS COUNSEL FOR THE REHAB DEPARTMENT, LLC</u>**

Plaintiff, The Rehab Department, LLC ("TRD"), by and through undersigned counsel, hereby files this Reply to the Response in Opposition to Motion to Discharge Lewis Brisbois Bisgaard & Smith LLP ("Lewis Brisbois") and Substitute Johnson, Newlon & DeCort, P.A. ("JND") as Counsel for The Rehab Department, LLC (Doc. 49) (the "Opposition"), and in support thereof, states as follows:

1.      On September 6, 2024, TRD filed its Motion to Discharge Lewis Brisbois and Substitute JND as its counsel (Doc. 47) (the "Motion"). On September 20, 2024, Lewis Brisbois filed the Opposition. The Opposition principally argues the Motion is premature in light of a Wyoming lawsuit challenging the validity of the Warrant providing for the change in majority ownership of TRD, but the Court should nonetheless deny the Motion because non-parties Ben Atkins ("Mr.

1

Atkins") and Clearwater Partners Lending, LLC ("CPL") do not individually have standing to contest Lewis Brisbois' representation of TRD and the Motion otherwise fails as a matter of law.

2.    First and foremost, contrary to the Opposition's assertion otherwise, the Motion was not brought on behalf of either Mr. Atkins or CPL.  As discussed herein and in more detail in the Motion, due to Mr. Atkins exercise of the Warrant, Mr. Atkins was the majority member of TRD.  Mr. Atkins' subsequent assignment of his 83% ownership interest to CPL made CPL TRD's member holding the majority of the ownership interest in TRD.  Accordingly, TRD (through its majority-in-interest) elected to terminate Lewis Brisbois and Attorneys Haft and Quintana as its counsel, and the Motion was filed on TRD's behalf to carry out its right to be represented by its chosen counsel JND.

3.    In espousing the purported legal standard for this situation, the Opposition cites to *Coral Reef of Key Biscayne Developers v. Lloyd's Underwriters at London*, 911 So. 2d 155 (Fla. 3d DCA 2005) and *Esquire Care, Inc. v. Maguire*, 532 So. 2d 740 (Fla. 2d DCA 1988), distinguishable and inapposite cases, for the proposition that "[t]he party seeking the removal of counsel has the burden of showing that it is necessary because of actual harm." Doc. 49, ¶ 27.

4.    In *Lloyd's Underwriters at London*, the respondent sought to disqualify the petitioner's attorneys on the basis "that they had obtained an unfair advantage from their review of confidential documents" after Florida's Third District Court of Appeal quashed the trial court's prior order which compelled the

disclosure of communications between respondent and its counsel.  911 So. 2d at 157.  This case addressed the standard for disqualification in "inadvertent disclosure" cases, i.e., cases in which a party gains an unfair tactical advantage by receiving privileged documents through inadvertent disclosure, and ultimately held "that a higher standard must apply for disqualifying counsel when the privileged documents are received pursuant to a court order that is subsequently vacated." *Id.* at 157-58.  Finding "the respondent failed to proffer before the trial court any evidence of actual harm caused by opposing counsel's review of the privileged documents[,]" the Court quashed the disqualification order. *Id.* at 158-59.

5.      Likewise, in *Maguire*, the petitioner sought to disqualify the respondents' counsel after said counsel's law firm hired a legal secretary that worked for petitioner's counsel's firm during the pendency of the action, and the trial court denied the disqualification motion after holding an evidentiary hearing and receiving testimony regarding the legal secretary's work performed on the file at her current firm.  532 So. 2d at 740-741.  The Court in *Maguire* held that before disqualifying counsel in such situation there should be an evidentiary hearing to determine "whether as a result one party has obtained an unfair advantage over the other which can only be alleviated by removal of the attorney." *Id.* at 741.  Noting the trial court had conducted such a hearing, the Court found no departure from the essential requirement of law and denied the petition for certiorari. *Id.* at 741-42.

6.      Clearly, *Lloyd's Underwriters at London*, which imposed a heightened standard of actual harm for inadvertent disclosure cases when the disclosure is a result of court order, and *Maguire*, which dealt with determining whether a litigant obtained an unfair advantage due to change in employment by a legal secretary, have no applicability to the case at bar. Those cases addressed situations in which parties were at risk of losing their chosen counsel. There has been no disclosure of privileged information or change in employment between employees of the respective law firms that could cause an involuntary change of counsel; instead, this case presents a relatively simple situation where the member holding a majority of the ownership interests in TRD has changed, and the company has now elected to terminate the services of its prior counsel. Put simply, no determination of actual harm or unfair advantage is necessary here.

7.      The Opposition posits that Mr. Atkins and CPL have no authority to act on behalf of TRD, "have no contractual privity with Lewis Brisbois as they are not a member of" TRD, and have no standing to discharge Lewis Brisbois as TRD's counsel. Doc. 49, ¶¶ 29, 32. In support, Lewis Brisbois points to the pending lawsuit in Wyoming (*see id.*, ¶ 31) and its position that St. Marks Rehab Management, LLC ("St. Marks"), the prior sole member of TRD, did not consent to the admission of additional members or the terms of the Warrant. *Id.*, ¶ 18. This position entirely ignores the plain language of the Warrant and the consent thereto by St. Mark's, the then sole member of TRD.

8.      The Warrant is for the "Eighty-Three (83%) Ownership fully paid and nonassessable ownership of the Company."[1] Doc. 47-2, pg. 2.  The Warrant states: "The Company hereby represents and warrants that the grant of this **has been approved by the shareholders of the Company**." *Id*., § 8 (emphasis added). The Warrant was executed on behalf of both TRD and St. Marks by Remko van der Voordt, designated as "its President."[2] *Id*., pg. 5.  Simply put, there is no legitimate argument that St. Marks did not consent to the admission of an additional member or the terms of the Warrant given the express representation and warranty of § 8 of the Warrant and the execution of same by Mr. van der Voordt.

9.      Once the Warrant was exercised, Mr. Atkins gained a majority of the ownership interest in TRD, which he then assigned to CPL.  The TRD Operating Agreement provides "[a]ll Members have the right to participate in the management and conduct of the Company's business[,]" and "all decisions requiring action of the Members or relating to the business or affairs of the Company will be decided by the affirmative vote or consent of Members holding a majority of the Ownership Interests."  Doc. 47-4, §§ 5.1, 5.2.  With this framework in mind, a relatively simple situation is presented: the member holding the majority of TRD's ownership interest has changed, that member has the right to

---

[1] Per the terms of the Warrant, the "Company" collectively refers to TRD and St. Marks.  *See* Doc. 47-2, pg. 2.

[2] Per the terms of the St. Mark's Operating Agreement, Mr. van der Voordt was the sole member of St. Marks.  *See* Doc. 47-3, § 2.1.  Thus, the sole member of St. Mark's caused St. Mark's, the sole member of TRD, to agree to the terms of the Warrant.

participate in the management and conduct of TRD, the business or affairs of TRD

are decided by the affirmative vote/consent of members holding a majority of the

ownership interests, and TRD (through its new majority-in-interest) has elected to

terminate Lewis Brisbois and engage JND as its new chosen counsel.

10.     Finally, the Opposition argues "[b]efore disqualifying a member's

attorney on the motion of another member, the court should balance the actual

prejudice to the objector with his or her opponent's interest in continued

representation by experienced counsel[,]" citing *Broin v. Phillip Morris Cos.,* 84

So. 3d 1107 (Fla. 3d DCA 2012) in support.  *See* Doc. 49, ¶ 36.  The Court in *Broin*,

an appeal arising from a class action case, announced a balancing test for

determining whether to disqualify a **class** member's attorney, concluding:

> The federal courts' approach affords a better method for determining
> when to disqualify an attorney for conflict of interest in the context of
> a class action. This approach balances a party's right to select his or
> her own counsel against a client's right to the undivided loyalty of his
> or her counsel. Accordingly, we conclude that, before disqualifying a
> class member's attorney on the motion of another class member, the
> court should balance the actual prejudice to the objector with his or
> her opponent's interest in continued representation by experienced
> counsel.

84 So. 3d at 1112.

11.     However, the decision in *Broin* was soon quashed by the Florida

Supreme Court in *Young v. Achenbauch*, wherein the Court expressly found the

"balancing test" adopted by the Third District "is not the proper test for motions to

disqualify counsel as set forth by this Court, and the Third District lacked the

constitutional authority to adopt a new test." 136 So. 3d 575, 581 (Fla. 2014).  Thus,

not only would *Broin* be inapposite as this is not class action litigation, but the very balancing test adopted by that opinion, and relied upon by the Opposition, is a reason why the decision was quashed by the Florida Supreme Court.

12.     In sum, this is not a situation in which a party is at risk of losing its chosen counsel through a motion to disqualify.  Thus, the cases cited in the Opposition for that proposition and standard are inapposite.  This case involves control of a party changing, and the party desiring new counsel.  TRD was forced to file a motion to discharge because prior counsel would not honor the client's wish to replace counsel.  Prior counsel's desire to represent the wishes of a minority member do not override the choice of the entity, through its majority member, to voluntarily select new counsel.

Dated: September 5, 2024.

/s/John E. Johnson
JOHN E. JOHNSON
Florida Bar No. 593000
jjohnson@jnd-law.com
BRADLEY F. KINNI
Florida Bar No. 1025847
bkinni@jnd-law.com
**JOHNSON, NEWLON & DECORT, P.A.**

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on October 23, 2024, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system.

/s/ John E. Johnson

7