# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### TAMPA DIVISION

THE REHAB DEPARTMENT, LLC, a
Wyoming Limited Liability Company,

      Plaintiff,

v.                                      Case No.: 23-cv-2554-SDM-LSG

ARK POST ACUTE NETWORKS, LLC,
CAMBRIDGE SIERRA HOLDINGS, LLC
d/b/a RECHE CANYON REHAB AND
HEALTH CARE CENTER, BIRDMONT
HEALTH CARE, LLC d/b/a CARRINGTON
PLACE AT WYTHEVILLE, EAST LAKE REHAB
& CARE CENTER, LLC d/b/a TRINITY
REGIONAL REHAB CENTER, LA OLD
HAMMOND HWY, LLC d/b/a PINES
RETIREMENT CENTER OF BATON
ROUGE, CARRINGTON PLACE REHAB-
NURSING, LLC d/b/a CARRINGTON PLACE
OF ST. PETE, ESSEX REHAB & CARE CENTER,
LLC d/b/a CARRINGTON PLACE OF
TAPPAHANNOCK, BOTETOURT HEALTH
CARE, LLC d/b/a CARRINGTON PLACE
AT BOTETOURT COMMONS, LA WESTFORK,
LLC d/b/a WHITE OAK POST-ACUTE
CARE, LA FIRST STREET, LLC d/b/a
SPRINGHILL POST ACUTE & MEMORY CARE,
and NORFOLK AREA SENIOR CENTER,
LLC d/b/a GREENBRIER REGIONAL
MEDICAL CENTER

      Defendants.

_____/

## <u>ORDER</u>

The plaintiff The Rehab Department, LLC, employs and furnishes to skilled

nursing facilities licensed speech, physical, and occupational therapists. Doc. 33 at

1

¶35. The plaintiff sues the defendants for violations of the Medicare Act, 42 U.S.C. § 1396, *et seq.*, and for breach of contract. Doc. 33. Ben Atkins and Clearwater Partners Lending, LLC ("CPL"), who recently acquired a majority ownership interest in the plaintiff, move to discharge attorneys David Haft and Pedro Quintana of Lewis Brisbois Bisgaard & Smith, LLP, and to substitute John Johnson and Bradley Kinni of Johnson, Newlon & Decort, P.A., as the plaintiff's attorneys. Doc. 47. The plaintiff's now-minority owner Remko van der Voordt opposes the request. Doc. 49. He requests judicial notice of a pending lawsuit in Wyoming state court challenging the validity of the acquisition. Doc. 48. Remko further moves to compel the defendants' late discovery responses and to extend case management deadlines, which motions Atkins and CPL move to strike as unauthorized. Docs. 53, 54, 55.

## I.     BACKGROUND

### A.     A stock warrant gives Atkins the right to purchase a majority interest in the plaintiff.

On August 10, 2015, the plaintiff and St. Marks Rehab Management, LLC, entered an "Eighty-Three Percent (83%) Ownership Purchase Warrant" (the "stock warrant") giving Atkins the option to buy for $1.00 eighty-three percent of the plaintiff and St. Marks. Doc. 47-2 at 2, 5. Remko signed the stock warrant on behalf of the plaintiff and St. Marks, which confirmed that their shareholders approved the stock warrant. Doc. 47-2 at 5; Doc. 47-2 at § 8.

Atkins could execute the stock warrant "at any time after August 10, 2015." Doc. 47-2 at 2. The stock warrant required Atkins (1) to surrender the stock warrant

to the plaintiff and St. Marks, (2) to send a statement confirming the exercise of Atkins right to purchase, and (3) to include the payment of $1.00. Doc. 47-2 at 2. Atkins could send these items to his office in Clearwater, Florida, or to any other location designated by Atkins. Doc. 47-2 at 2. Once sent, Atkins became "entitled to receive such number of fully paid and nonassessable shares of membership equaling Eighty-Three Percent Ownership." Doc. 47-2 at 2. Atkins could transfer the stock warrant "to a person or an entity under common control with the Purchaser." Doc. 47-2 at § 5.

The stock warrant prohibits dilution or impairment of Atkins' rights under the warrant. Doc. 47-2 at § 2. Further, the stock warrant provides that "[n]either this Warrant nor any term hereof may be changed, waived, discharged or terminated except by an instrument in writing signed by the holder of the Warrant and by the Company." Doc. 47-2 at § 9(a). Florida law governs the stock warrant "and all amendments hereof and waivers and consents hereunder." Doc. 47-2 at § 9(b).

**B.    The plaintiff's operating agreement delineates the process for becoming a member of the company.**

On August 15, 2015, the plaintiff entered an operating agreement to form a limited liability company under the Wyoming Limited Liability Company Act. Doc. 47-4 at 2. The operating agreement identifies the plaintiff as the "Company" and is governed by Wyoming law. Doc. 47-4 at §§ 1.1, 11.7. The "parties" to the operating agreement are the "Members," which consist of St. Marks as the sole member and owner of the plaintiff. Doc. 47-4 at 1, § 2.1. The operating agreement provides that

3

"additional Members of the Company may be admitted only with the consent of all Members." Doc. 47-4 at § 2.3.

The plaintiff is a member-managed LLC and "[a]ll Members have the right to participate in the management and conduct of the Company's business." Doc. 47-4 at § 5.1. Generally, "all decisions requiring action of the Members or relating to the business or affairs" of the plaintiff require a majority vote. Doc. 47-4 at § 5.2. A member must obtain all members' prior written consent to "transfer all or a part of the Member's interest in the Company." Doc. 47-4 at § 9.2. A transfer of membership under the operating agreement "includes a sale, exchange, pledge, or other disposition, voluntarily or by operation of law." Doc. 47-4 at § 9.1.

A transferee of a member's interest becomes a member only (1) if the transferee delivers to the "Company" a written agreement to be bound by the terms of the operating agreement and (2) "if all of the other Members consent to the admission of the transferee as a Member[.]" Doc. 47-4 at § 9.5. This consent "may be withheld reasonably or unreasonably." Doc. 47-4 at § 9.5. Membership occurs automatically only if ownership rests with a single member and that member transfers its entire interest. Doc. 47-4 at § 9.5. Otherwise, a transferee cannot become a member without the transferee's agreeing to abide the operating agreement and the other members' consenting. Doc. 47-4 at § 9.5. "If the transferee is not admitted as a Member, the transferee will have the right only to receive, to the extent assigned, the distribution from the Company to which the transferor would be entitled. Such

transferee will not have the right to exercise the rights of a Member . . . ." Doc. 47-4 at § 9.5.

### C.    Atkins' exercise and transfer of the stock warrant.

On June 28, 2024, Atkins exercised his right under the stock warrant to purchase an ownership interest in the plaintiff and then assigned his interest to CPL. Doc. 47 at ¶9. CPL sent the plaintiff a cashier's check for $1.00, along with a statement from CPL that Atkins was purchasing an eighty-three percent interest in the plaintiff. Doc. 47 at ¶9; Doc. 47-5. CPL shipped the surrendered stock warrant, cashier's check, and statement of purchase on July 9, 2024, which Remko received on July 15, 2024. Doc. 47-6.

On June 28, 2024, Atkins wrote a letter purporting to terminate the representation of David Haft and the attorneys at Lewis Brisbois Bisgaard & Smith. Doc. 47-7. The letter announced that Atkins exercised his right under the stock warrant, that Atkins has "become the majority owner" of the plaintiff, and that the plaintiff "has effectively established that Mr. Atkins shall lead its management." Doc. 47-7 at 2.

## II.    LEGAL ANALYSIS

Local Rule 2.02(c)(4) and Rule 4-1.16, Rules Regulating the Florida Bar, govern discharge and substitution of counsel. Local Rule 2.02(c)(4) requires that a party discharging counsel "obtain substitute counsel in time to comply with the deadlines." Similarly, Rule 4-1.16(a) requires that "a lawyer shall not represent a client or, where representation has commenced, shall withdraw from the

representation of a client if . . . the lawyer is discharged." R. Regulating Fla. Bar 4-1.16(a). Thus, "[a] client has a right to discharge a lawyer at any time, with or without cause, subject to liability for payment for the lawyer's services." Cmt. R. Regulating Fla. Bar 4-1.16; *State ex rel. Branch v. DuVal*, 249 So. 2d 468, 469 (Fla. 3d DCA 1971) ("It appears well settled that a litigant is entitled to dispense with the services of his attorney of record at any time with or without cause and without the need to assign a reason, and to have other counsel substituted in the cause."). Substitution may occur if substitute counsel is in good standing with the Bar and "the substitution of attorneys will not interfere with the orderly functioning of the court . . . or prejudice the opposing party by creating unfair advantage[.]" *Larson v. Grossman*, 604 So. 2d 1274, 1275 (Fla. 4th DCA 1992) (citing *Fisher v. State*, 248 So. 2d 479 (Fla. 1971), and *Pantori, Inc. v. Stephenson*, 384 So. 2d 1357 (Fla. 5th DCA 1980)).[1]

Atkins and CPL seek to discharge and substitute counsel based on a change in the plaintiff's majority ownership. Generally, "[a] client has great latitude in discharging his or her attorney, and an attorney's authority to act for a client is freely revocable by the client." *Pippin v. Playboy Ent. Grp., Inc.*, No. 802CV2329T17EAJ, 2006 WL 213851, at *13 n.43 (M.D. Fla. Jan. 27, 2006); Cmt. R. Regulating Fla. Bar 4-1.16. A non-party, however, cannot discharge counsel. *Whiteside v. Sch. Bd. of*

---

[1] An order for substitution of counsel must also contain "appropriate reservation of jurisdiction to determine and provide for [] compensation" of the discharged attorney in a contingency fee case. *State ex rel. Branch*, 249 So. 2d at 469–70.

*Escambia Cnty.*, 798 So. 2d 859, 859-60 (Fla. 1st DCA 2001) ("Under the general rule, one not a party to a case has no standing to request relief from the court."). Before granting the motion, I must determine whether CPL is the majority owner of the plaintiff and whether that ownership grants CPL the authority to discharge counsel.

### A.    The stock warrant is valid and enforceable.

Florida law governs the stock warrant. Doc. 47-2 at § 9(b); *Chau Kieu Nguyen v. JP Morgan Chase Bank, NA*, 709 F.3d 1342, 1345 (11th Cir. 2013); *see also Jumpstart of Sarasota, LLC v. ADP Screening & Selection Servs., Inc.*, No. 8:11–cv–617–T–17TGW, 2011 WL 6132310, at *5 (M.D. Fla. Dec. 9, 2011) (citing Restatement (Second) Conflict of Laws Sec. 187)). A contract requires an "(1) offer; (2) acceptance; (3) consideration; and (4) sufficient specification of the essential terms." *Vega v. T-Mobile USA, Inc.*, 564 F.3d 1256, 1272 (11th Cir. 2009) (applying Florida law) (citations omitted). The parties must mutually assent to the essential terms of the agreement. *PB Legacy, Inc v. Am. Mariculture, Inc.*, No. 2:17-CV-9-FTM-29NPM, 2020 WL 1820509, at *10 (M.D. Fla. Apr. 10, 2020) (citing *David v. Richman*, 568 So. 2d 922, 924 (Fla. 1990)).

"[A] contract [that] is clear, complete, and unambiguous does not require judicial construction." *Imagine Ins. Co. v. State ex rel. Dep't of Fin. Servs.*, 999 So. 2d 693, 696 (Fla. 1st DCA 2008) (quotation omitted); *Smart Commc'ns Holding, Inc. v. Correct Sols., LLC*, No. 8:20-CV-1469-JLB-JSS, 2023 WL 5003169, at *9 (M.D. Fla. Aug. 4, 2023) (explaining that in a contract dispute "the language itself is the best

7

evidence of the parties' intent and its plain meaning controls . . . ." (quoting *Palm Beach Pain Mgmt., Inc. v. Carroll*, 7 So. 3d 1144, 1145 (Fla. 4th DCA 2009))). Additionally, "the parties to a contract can discharge or modify the contract, however made or evidenced, through a subsequent agreement." *St. Joe Corp. v. McIver*, 875 So. 2d 375, 381 (Fla. 2004).

Here, Atkins and Remko entered the stock warrant on August 10, 2015. Doc. 47-2 at 5. This is the same day that the plaintiff filed its articles of organization in Wyoming. Doc. 47-1. The plain language of the stock warrant shows a valid offer, acceptance, consideration, and the mutual assent of the plaintiff, St. Marks, and Atkins. Remko argues[2] that St. Marks as the sole member of the plaintiff never consented to the admission of additional members, the terms the stock warrant, or the transfer of ownership interest. Doc. 49 at 6. Remko also cites Wyoming law to assert that the stock warrant required the consent of all members. Doc. 49 at 6.

Remko's argument is belied by the plain language of the stock warrant. *Imagine Ins. Co.*, 999 So. 2d at 696. Remko signed the stock warrant on behalf of both St. Marks and the plaintiff, which the stock warrant collectively identifies as the "Company." Doc. 47-2 at 2, 5. At the time of signing, Remko was the sole managing

---

[2] Rather than arguing extensively the validity of the purchase warrant, Remko instead moves for judicial notice of his complaint in Wyoming. Doc. 48 at 10. Judicial notice of the docket and the pleadings is appropriate. *Weaver v. Mateer & Harbert, P.A.*, No. 5:09-CV-514-OC-34TBS, 2012 WL 3065362, at *3 n.7 (M.D. Fla. July 27, 2012), *aff'd*, 523 F. App'x 565 (11th Cir. 2013). However, to the extent that Remko requests judicial notice as means to supplement his response to the motion to discharge, his request is denied. *Id.* (citing *United States v. Jones*, 29 F.3d 1549, 1553 (11th Cir. 1994)).

member of St. Marks, and St. Marks was the sole member of the plaintiff.[3] Doc. 47-3 at 3; 47-4 at 3. The stock warrant says that "[t]he Company hereby represents and warrants that the grant of this has been approved by the shareholders of the Company." Doc. 47-2 at ¶8. Thus, all members of the plaintiff signed and consented to the terms of the stock warrant, including Atkins' right to buy an eighty-three percent interest in the plaintiff.

Additionally, Atkins shows that he followed the necessary steps to purchase a majority stake in the plaintiff under the stock warrant. Doc. 47-2 at 2. Atkins surrendered the stock warrant to the plaintiff and St. Marks, along with a statement exercising the right to purchase and a cashier's check for the payment of $1.00. Docs. 47-5, 47-6. Thus, Atkins was "entitled to receive such number of fully paid and nonassessable shares of membership equaling Eighty-Three Percent Ownership." Doc. 47-2 at § 1.1. Atkins' transfer of his interest to CPL was valid under Section 5 of the stock warrant because CPL is "an entity under common control with the Purchaser." Doc. 47-2 at § 5; Doc. 47-5 at 2 ("Clearwater Partners Lending, LLC functions under the sole ownership and operation of Mr. Benjamin Atkins.").

Remko argues that the plaintiff's operating agreement, including its integration clause, invalidates the stock warrant. Doc. 64. The integration clause says

---

[3] Remko's authority to consent on behalf of St. Marks as the sole member of the plaintiff is further supported by his filings in an earlier case, *Reliant Pro Rehab LLC v. Atkins et al*, 8:16-cv-3287-MSS-MAP (M.D. Fla. May 6, 2016), in which both Remko and Atkins were co-defendants. Remko's sworn statement attached to his and Atkins' joint motion to dismiss in that case says, "I am the only member of Rehab and am a citizen of Florida." 8:16-cv-3287-MSS-MAP, Doc. 7-4.

that "[t]his document and any exhibit attached constitute the entire understanding
and agreement of the parties, and any and all prior agreements, understandings, and
representations, whether oral, in a record, or implied are hereby terminated and
canceled in their entirety and are of no further force and effect." Doc. 47-4 at § 11.11.

Florida law recognizes "[t]he well[-]established rule . . . that a contract may be
discharged or extinguished by merger into a later contract entered into between the
parties in respect to the same subject which replaces the original contract." *PB Legacy,
Inc.*, 2020 WL 1820509, at *8 (quoting *Aly Handbags, Inc. v. Rosenfeld*, 334 So. 2d 124,
126 (Fla. 3d DCA 1976)). However, "a merger clause in an integrated contract will
not supersede a prior agreement that embraces a subject matter different from that
addressed in the integrated contract." *Garcia v. Harmony Healthcare, LLC*, No. 8:20-cv-
1065-WFJ-AAS, 2021 WL 1610093, at *4 (M.D. Fla. Apr. 26, 2021).

Here, the operating agreement does not supersede the stock warrant. The
operating agreement and the stock warrant have distinct parties and purposes. Atkins
is not a party to the operating agreement. Doc. 47-4 at 2. The operating agreement
governs the formation and function of the plaintiff under Wyoming's LLC Act. Doc.
47-4 at 2. The stock warrant is an option agreement. Doc. 47-2 at 2. Thus, the
integration clause is inapplicable. *PB Legacy, Inc.*, 2020 WL 1820509, at *9.

Furthermore, Section 9(a) of the stock warrant requires the plaintiff, St.
Marks, and Atkins to consent in writing to any alteration or termination of the stock
warrant. Doc. 47-2 at § 9(a). Because Atkins is not a party to the operating
agreement, the integration clause cannot terminate or alter the terms of the stock

10

warrant. Section 2 of the stock warrant prohibits dilution or impairment and says that neither the plaintiff nor St. Marks may act in any manner to "avoid or seek to avoid the observance or performance of any of the terms of the Warrants," including through "amendment of its certificate of incorporation or . . . any reorganization." 47-2 at § 2. Accordingly, the stock warrant is valid and enforceable, and both Atkins and CPL validly acquired a majority stake in the plaintiff.

> **B.     Atkins and CPL fail to show that they are members of the plaintiff and, thus, lack authority to discharge and substitute the plaintiff's counsel.**

Remko argues that neither Atkins nor CPL may act on behalf of the plaintiff because they lack "contractual privity with Lewis Brisbois." Doc. 49 at 10. Neither is a member of the plaintiff and, thus, neither possesses standing to discharge counsel. Doc. 49, at ¶¶ 29, 32. Notably, the stock warrant is silent as to whether the transfer of ownership renders Atkins a shareholder or a member. Thus, the plaintiff's operating agreement and Wyoming's LLC Act govern. *See* Doc. 47-4 at §§ 1.2, 11.7; *Jumpstart of Sarasota, LLC, Inc.*, 2011 WL 6132310, at *5.

"Under Wyoming law, a person may become a member of an LLC in three relevant ways: (1) in accord[] with the LLC's operating agreement; (2) as a result of a company merger, conversion, or similar transaction; or [(3)] with the consent of all the members." *Pandora Mktg., LLC v. Wyndham Vacation Ownership, Inc.*, No. 6:23-CV-1513-WWB-EJK, 2023 WL 8520332, at *2 (M.D. Fla. Dec. 8, 2023) (citing Wyo. Stat. Ann. § 17-29-401(d)). The stock warrant is not a "merger, conversion, or similar transaction." *Id*. Nor does stock warrant demonstrate that the plaintiff and St. Marks

11

consent to membership. Thus, Atkins and CPL must show that they are members under the terms of the plaintiff's operating agreement.

If the language of a contract is clear and unambiguous, the plain meaning of the agreement governs. *Kirkwood v. CUNA Mut. Ins. Soc.*, 937 P.2d 206, 208-09 (Wyo. 1997). Parties to an agreement cannot create an ambiguity by mere disagreement. *Id.* at 209. The parties' intent is determined by reading the agreement as a whole. *Id.* at 208 (citing *Doctors' Company v. Insurance Corporation of America*, 864 P.2d 1018, 1023 (Wyo. 1993)).

Here, Remko argues that neither Atkins nor CPL is a member of the plaintiff because St. Marks did not consent to the admission of additional members or to the stock warrant. Doc. 49 at 6. Remko also argues that Wyoming's LLC Act requires unanimous member consent for an act outside of the ordinary course of business, such as a change of ownership. Doc. 49 at 6 (citing Wyo. Stat. Ann. § 17-29-407(b)).

The terms under which an individual or entity may become a member of the plaintiff are clear and unambiguous. *See In re Kite Ranch, LLC*, 234 P.3d 351, 357 (Wyo. 2010); *see also Lieberman v. Mossbrook*, 208 P.3d 1296, 1307-1310 (Wyo. 2009). According to the operating agreement, the plaintiff is a member-managed LLC and "[a]ll Members have the right to participate in the management and conduct of the Company's business." 47-4 at § 5.1. If a single member owns the company and that member transfers its "entire interest" to another, the transferee automatically becomes a member of company. Doc. 47-4 at § 9.5. However, when a transferee receives only a partial ownership interest, the operating agreement requires

12

additional steps to become a member. Doc. 47-4 at § 9.5. Absent these steps, the
transferee has "the right only to receive, to the extent assigned, the distributions from
the Company to which the transferor would be entitled," and "will not have the right
to exercise the rights of a Member . . . ." Doc. 47-4 at § 9.5.

Because the plaintiff and St. Marks transferred only part of their ownership
interest, the operating agreement required CPL (1) to agree in writing to the terms of
operating agreement and (2) to obtain St. Marks' consent to become a member. Doc.
47-4 at § 9.5. Even though CPL acquired a majority ownership of the plaintiff and
St. Marks under the stock warrant, Remko is a member of St. Marks and must
consent to CPL's becoming member.

St. Marks' operating agreement is virtually identical to the plaintiff's operating
agreement. *Compare* Doc. 47-3 *with* Doc. 47-4. The agreement identifies Remko as
the sole member of St. Marks. Doc. 47-3 at § 2.1. St. Marks is a member-managed
LLC and requires the same steps to become a member as in the plaintiff's operating
agreement. Doc. 47-3 at § 9.5. Thus, for CPL to become a member of St. Marks,
CPL must agree in writing to the terms of St. Marks' operating agreement and
obtain Remko's consent to become a member. Doc. 47-3 at § 9.5.

Until these steps occur, the transfer of ownership interest under the stock
warrant gives CPL only the right to receive distributions and not to exercise the rights
of a member. Without membership rights, Atkins and CPL lack authority to
"participate in the management and conduct of the Company's business." 47-4 at
§ 5.1. Thus, although Atkins and CPL obtained an eighty-three percent ownership

interest in the plaintiff and St. Marks, neither Atkins nor CPL is a member of the plaintiff with the authority to discharge or substitute counsel. Docs. 47-7, 47-8.

Additionally, even if CPL becomes a member of the plaintiff and St. Marks, both operating agreements require unanimous member approval when seeking to "authorize a transaction involving an actual or potential conflict of interest between a Member and the Company." Doc. 47-3 at § 5.3.5; Doc. 47-4 at § 5.3.5. Remko argues that the substitution of counsel would result in a conflict of interest because "Atkins is also the principal and majority owner" of the defendants. Doc. 49 at 3, 13. To the extent that Remko can demonstrate a "potential conflict of interest," CPL may need "prior written consent" of all St. Marks members to the discharge and substitution of counsel.[4]

### C.    Pending discovery requests and case management schedule.

The plaintiff moves to compel a written response to the plaintiff's requests for production and for a better response to the plaintiff's interrogatories. Doc. 53. The defendants argue that the discovery is disproportionate to the needs of the case and that the plaintiff's counsel failed to meaningfully confer. Doc. 58. Additionally, the defendants sought a stay of discovery pending resolution of the plaintiff's representation issue. Doc. 58.

Both the motion to discharge and the lack of a meaningful conference between the parties necessitate additional time to confer and to complete discovery. The

---

[4] This issue was not fully briefed and, therefore, nothing in this order decides whether CPL must obtain Remko's consent to the substitution under the operating agreements.

parties must meet and confer no later than ten days from the day of this order and discuss (1) the additional time necessary to complete discovery and (2) the pending discovery requests and any objection to the response. No later than fourteen days from the day of this order the parties must jointly propose an amended case management schedule. To the extent necessary after their conference, either party may contact chambers for a discovery status conference or move for relief under Rules 26(c) or 37(a), Federal Rules of Civil Procedure.

## III.    CONCLUSION

Accordingly, the motion to discharge Lewis Brisbois Bisgaard & Smith LLP and substitute Johnson, Newlon & Decort, P.A. as plaintiff's counsel, Doc. 47, is **DENIED** without prejudice. The motion for judicial notice, Doc. 48, is **GRANTED IN PART**. The plaintiff's time-sensitive motion to extend case management deadlines, Doc. 54, is **GRANTED**. After the parties confer and jointly propose an amended schedule, the Court will establish amended deadlines by separate order. The plaintiff's time-sensitive motion to compel discovery, Doc. 53, is **DENIED** without prejudice. The motion to strike, Doc. 55, is **DENIED**.

**ORDERED** in Tampa, Florida, on this 30th day of December, 2024.

LINDSAY S. GRIFFIN
United States Magistrate Judge